UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 08-80164-CIV-MARRA

SAL J. PELLEGRINO,

    Plaintiff,

vs.

KOECKRITZ DEVELOPMENT OF
BOCA RATON, LLC,

    Defendant .
_____/

## OPINION AND ORDER

This cause is before the Court upon Defendant Koeckritz Development of Boca Raton, LLC's Motion to Dismiss Complaint [DE 5] filed March 13, 2008, and Motion to Dissolve Lis Pendens, or in the Alternative, Post Bond [DE 7], filed March 26, 2008. The motions are now fully briefed and ripe for review.  The Court has carefully considered the motions and is otherwise fully advised in the premises.

    I.  Background

On February 19, 2008, Plaintiff Sal. J. Pellegrino ("Plaintiff") filed his Complaint, seeking to revoke his contract for purchase of a home from Defendant Koeckritz Development of Boca Raton, LLC ("Defendant") under the Interstate Land Sales Full Disclosure Act ("ILSA"), 15 U.S.C. § 1701 et seq.  The facts, as alleged in the Complaint, are as follows:  On or about July 23, 2005, Plaintiff executed a Purchase Agreement for the purchase of a unit for $3,495,000.00 in a community known as the Blue Water Townhouses from Defendant. (Compl. ¶ ¶ 6-7; Purchase Agreement, Ex. A., attached to Compl.)  At the time Plaintiff entered into the Purchase

Agreement, he paid an initial deposit of ten percent of the purchase price. (Compl. ¶ 8.) The Purchase Agreement required an additional deposit of ten percent of the purchase price to be due upon notice of installation of roof trusses and sheathing, and the remaining balance of the purchase price was due at closing. (Compl. ¶ 9.) Plaintiff claims that Defendant failed to construct or otherwise failed to provide Plaintiff with notification of completion of the second phase of the project. (Compl. ¶ 12.)

On July 26, 2007, Plaintiff notified Defendant that "he was exercising his contractual and statutory right to revoke the Purchase Agreement as a result of Defendant's failure to complete construction of the townhouse within two years" as required under ILSA and requested a return of his initial deposit. (Compl. ¶ 13; July 26, 2007 Letter, Ex. B, attached to Compl.[1]) In response, Defendant notified Plaintiff that it was keeping Plaintiff's deposit due to "Plaintiff's alleged default of the second deposit upon completion of the roofing on the townhouse." (Compl. ¶ 14, Aug. 1, 2007 Letter, Ex. C, attached to Compl.)

Plaintiff claims that Defendant was required under 15 U.S.C. § 1702(a)(2) to complete construction of the home within two years of the date that Plaintiff signed the Purchase Agreement in order to satisfy the two-year exemption to the reporting requirement set forth in ILSA. (Compl. ¶ 10.) In seeking revocation, Plaintiff alleges that Defendant failed to provide him with a printed property report as required under 15 U.S.C. § 1703(a)(1). Plaintiff further

---

[1] Plaintiff's letter to Defendant states, in part, the following: "*Pursuant to said contract*, and in accordance with [ILSA], you were *unconditionally* required to complete construction of the townhome within two years of the contract date." (July 26, 2007 Letter (emphasis added).) Although this letter describes the contract as "unconditional[ ]" with respect to Defendant's obligation to build within two years, Plaintiff now argues that the contract provided a conditional guarantee of completion within two years. (Resp. at 3.)

alleges that Defendant is not exempt from ILSA under 15 U.S.C. § 1702(a) and that he is therefore entitled to revoke the Purchase Agreement. (Compl. ¶ 19.)

The relevant portions of the Purchase Agreement are as follows:

**Estimated Closing Date/Completion of Construction**

Seller shall attempt to complete the Home on or before the estimated closing date as reflected on the front pre-printed page of this Contract. Seller cannot guarantee a firm completion and availability date, such advance projections being, and by their very nature having to be, approximate estimates. The actual closing date may vary from the estimated closing date as a result of a number of factors including, by way of example but not limitation, the following: (a) the time period necessary for the applicable government authorities to approve plats, development permits and other approvals for the Community; (b) the time period required for the development of raw land into lots ready to accommodate home construction; (c) the time period required by Purchaser to obtain Preliminary Approval; (d) the time period necessary for the applicable governmental authorities to issue a building permit, perform required inspections and issue the Certificate of Occupancy for the House; (e) inclement weather during the development and construction processes; (f) any requests by Purchaser for changes, additions, deletions or other modifications to the Home subsequent to the completion of the Color Selection Process, and/or (g) unavailability of materials or labor problems during the construction process. Seller shall make every reasonable and diligent effort to meet estimated construction schedules. In any event, Seller shall complete the construction of the House within two (2) years (the time limitation required to insure Seller's exemption under Section 1702(a)(2) of the [ILSA]).

(Section E.3 of the Purchase Agreement.)

**Development Plan**

The Community is a proposed development of approximately six (6) residential units which may include, but not necessarily be limited to, residential units contained in a multi-unit building. However, Blue Water is governmentally approved for six (6) homes.

(Section F.1 of the Purchase Agreement.)

**Severability**

Should any provisions or portion of this Contract be found or ruled to be illegal or otherwise invalid by a court of competent jurisdiction, such provision or portion of this Contract shall be given its nearest legal meaning or be construed as deleted as such court determines, and the same will not invalidate the remaining provisions of this Contract, which provisions will

>remain in full force and effect. Without limiting the generality of the foregoing and notwithstanding anything to the contrary in this Contract, if any provisions of this Contract serve to limit or qualify Seller's obligation to complete construction of the Home within the time period set forth in Section E.3 above and such qualifications or limitations, or any other provisions of this Contract, are not permitted if Seller's exemption under Section 1907(a)(2)[2] of the [ILSA] is to apply or this Contract is to otherwise be fully enforceable, then all of those provisions are hereby deleted and made null and void as if never a part of this Contract

(Section G.13 of the Purchase Agreement.)

Defendant seeks dismissal of the Complaint, arguing that it is exempt from the requirements of ILSA because the Blue Water development consists of fewer than twenty-five lots and the Purchase Agreement obligates it to complete construction of the home within two years.  In response, Plaintiff asserts that the Purchase Agreement contained a conditional promise, and not an unconditional guarantee, to complete construction within two years. Additionally, Plaintiff states that even if the development was designed for fewer than 25 lots, Defendant misled Plaintiff, or Plaintiff reasonably believed, that the development was part of a larger development.  In the alternative, Plaintiff argues that Defendant is liable for the breach of contract for failing to complete construction within two years.

## II.  Legal Standard

Rule 8(a) of the Federal Rules of Civil Procedure requires "a short and plain statement of the claims" that "will give the defendant fair notice of what the plaintiff's claim is and the ground upon which it rests." Fed. R. Civ. P. 8(a).  The Supreme Court has held that "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than

---

[2] The Court believes that this citation is a typographical error.  This section of the United States Code does not exist.

labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1964-65 (2007) (internal citations omitted).  When considering a motion to dismiss, the Court must accept all of the plaintiff's allegations as true in determining whether a plaintiff has stated a claim for which relief could be granted.  Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).  In addition, documents are considered part of the pleading when attached as an exhibit to the Complaint.  Fed. R. Civ. P. 10(c) ("a copy of a written instrument that is an exhibit to a pleading is part of the pleading for all purposes"); see Brooks v. Blue Cross & Blue Shield, Inc., 116 F.3d 1364, 1369 (11th Cir. 1997) (in ruling on a 12(b)(6) motion, the Court may consider documents attached to the complaint).

### III. Discussion

The ILSA "is an antifraud statute utilizing disclosure as its primary tool" to "protect purchasers from unscrupulous sales of undeveloped home sites."  Winter v. Hollingsworth Properties, Inc., 777 F.2d 1444, 1446-47 (11th Cir. 1985).  Specifically, the ILSA prohibits any developer from making use of interstate commerce to sell or lease a property unless a statutorily defined property report is furnished to the purchaser.  15 U.S.C. § 1703(a)(1)(B).  However, sales of "improved land on which there is a residential, commercial, condominium, or industrial building, or the sale or lease of land under a *contract obligating the seller or lessor to erect such a building thereon within a period of two years*" are exempt from the ILSA's coverage.  15 U.S.C. § 1702(a)(2) (emphasis added).  Federal law governs the interpretation of the ILSA, a federal statute.  Sola Electric Co. v. Jefferson Electric Co., 317 U.S. 173, 176 (1942).  The Department of Housing and Urban Development ("HUD") has provided some guidance as to the

meaning of the word "obligate."  In essence, "[t]he contract must not allow nonperformance by the seller at the seller's discretion."  Guidelines for Exemptions Available Under the Interstate Land Sales Full Disclosure Act, 61 Fed. Reg. 13596, 13603 (Mar. 27, 1996) [hereinafter, Guidelines].  The Guidelines also state that "[c]ontract provisions which allow for nonperformance or for delays of construction completion beyond the two-year period are acceptable if such provisions are legally recognized as defenses to contract actions in the jurisdiction where the building is being erected."  Specifically, the Guidelines state that "time extensions for events or occurrences such as acts of God, casualty losses or material shortages are generally permissible."  Id.  While the HUD Guidelines are to be given "great deference," Winter, 777 F.2d at 1448, whether a contract "obliges" the seller to erect a building within two years is ultimately a question of state contract law.  Markowitz v. Northeast Land Co., 906 F.2d 100, 105 (3d Cir. 1990); Guidelines, 61 Fed. Reg. at 13603.  In addressing the ILSA, the Florida Supreme Court has stated that "the obligation [to build within two years] must be unrestricted and the contract must not limit the purchaser's right to seek specific performance or damages" Samara Development Corp. v. Marlow, 556 So. 2d 1097, 1100 (Fla. 1990).

In the Purchase Agreement at issue, Plaintiff does not allege that the remedies available under the contract are restricted.  The Purchase Agreement plainly states that, if the seller defaults, the purchaser may receive a refund of any deposits paid or "exercise any other remedy available to Purchaser under applicable law." (Section G.2 of Purchase Agreement.)  Thus, the Purchase Agreement did not limit Plaintiff's remedial rights and the Court must instead examine whether section E.3 of the Purchase Agreement renders the "obligation" to build within two years illusory.  If the obligation is "illusory," then the ILSA applies.

Here, the Purchase Agreement expressly obligates Defendant to complete construction of the home within two years. Specifically, the Purchase Agreement states that "Seller shall complete the construction of the House within two (2) years (the time limitation required to insure Seller's exemption under Section 1702(a)(2) of the [ILSA])." (Section E.3 of the Purchase Agreement.) The language preceding this sentence explains that, due to a variety of enumerated factors, the seller cannot guarantee that the estimated closing date will be the actual closing date, but the seller will "in any event" complete construction within two years. In other words, those enumerated factors address the various circumstances that might cause a delay from actually closing on the estimated closing date. Significantly, those factors do not relate, in any way, to extending the date for completing construction. As such, it is difficult for the Court to envision clearer language that would obligate a seller to complete construction within two years. Given that this language is clear and unambiguous, the Court need not engage in additional interpretation of this clause. See Hurt v. Leatherby Ins. Co., 380 So. 2d 432, 433 (Fla. 1980) (when contract language is "clear and unambiguous, the court[ ] cannot indulge in construction or interpretation of its plain meaning").

Moreover, the severability clause in the Purchase Agreement supports this conclusion. That language makes void any language in the Purchase Agreement that restricts the obligation to build within two years. See Section G.13 of the Purchase Agreement ("if any provisions of this Contract serve to limit or qualify Seller's obligation to complete construction of the Home within the time period set forth in Section E.3 . . . then all of those provisions are hereby deleted and made null and void as if never a part of this Contract"). Clearly, then, the intent of this Purchase Agreement was, above all else, to ensure that the two-year exemption in ILSA endures.

The Court will, however, briefly discuss the cases relied upon by Plaintiff in support of its argument that the two-year exemption does not apply.  Stein v. Paradigm Mirsol, LLC, — F. Supp —, 2008 WL 344492 (M.D. Fla. Feb. 7, 2008) addressed force majeure clauses that rendered conditional the commitment to construct within the two year time period.  The contract in Stein did not have the language present here; that is, language that affirmatively obligated the seller to complete construction within two years.  Therefore, Plaintiff's reliance on this case is unhelpful.  In Bush v. Bahia Sun Assoc., 543 F. Supp. 2d 1295 (M.D. Fla. 2008), the plaintiffs alleged that they could produce facts demonstrating that the developer never intended to obligate itself to complete construction within two years.  Id at 1297-98.  This Complaint does not make any allegations comparable to those in Bush.  Lastly, Plaintiff's assertion that a claim for breach of contract exists, even if the Court finds that Defendant is exempt from ILSA, can be easily dismissed. Such a claim was not pled in the Complaint.  Given that the Court is dismissing the Complaint due to Defendant's exemption under ILSA, Plaintiff is not precluded from bringing a claim for breach of contract in state court.[3]

For these reasons, the Court finds that the Purchase Agreement exempts Defendant from ILSA under the two-year exemption.[4]

---

[3] The Court also rejects Plaintiff's statement that section 1702(a)(2) of ILSA required Defendant to complete construction of the home within two years to satisfy the two-year exemption provision of ILSA. (Compl. ¶ 10.)  All that is required to qualify for the exemption is for the seller to obligate itself to complete construction in two years.  Section 1702(a)(2) of the ILSA states that the statute does not apply to the sale of land "under a contract *obligating* the seller or lessor to erect such a building thereon within a period of two years." (emphasis added) There is no indication in the statute that the seller's failure to fulfill its obligation eliminates the exemption.

[4] The Court does not accept that Defendant is eligible under ILSA for an exemption because the development only contained six lots. (Mot. at 6.)  This defense requires a factual

III. Conclusion

Accordingly, it is hereby **ORDERED AND ADJUDGED** that Defendant's Motion to Dismiss Complaint [DE 5] is **GRANTED**.[5] As a result, Defendant's Motion to Dissolve Lis Pendens, or in the Alternative, Post Bond is **DENIED WITHOUT PREJUDICE**. Defendant may bring this motion in the appropriate state court. All pending motions are **DENIED AS MOOT**. The Clerk shall **CLOSE** this case.

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 9th day of July 2008.

_____
KENNETH A. MARRA
United States District Judge

---

determination into whether Section F.1 of the Purchase Agreement accurately portrayed the development. Thus, it is inappropriate for disposition on a motion to dismiss. Likewise, the Court also dismisses Defendant's argument that Plaintiff's failure to timely revoke his Purchase Agreement is fatal to his ILSA claim. (Reply at 6.) This argument was first raised in Defendant's reply memorandum and the Court will not consider it. See United States v. Britt, 437 F.3d 1103, 1104-05 (11th Cir.2006) (declining "to consider issues raised for the first time in a reply brief ").

[5] Based upon the clear and unambiguous language in the contract obligating Defendant to complete construction of the home within two years, the Court finds that granting Plaintiff leave to amend his complaint would be futile.