UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 08-80164-CIV-MARRA/JOHNSON

SAL J. PELLEGRINO,

          Plaintiff,

v.

KOECKRITZ DEVELOPMENT
OF BOCA RATON, LLC,

          Defendant.

FILED by _____ D.C.

MAY 1 5 2009

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - W.P.B.

## REPORT AND RECOMMENDATION ON PLAINTIFF'S CLAIM OF EXEMPTION

**THIS CAUSE** is before the undersigned as a result of the March 19, 2009, referral by the Honorable Kenneth A. Marra, United States District Judge, (DE 48) "for appropriate disposition or report and recommendation on Plaintiff's Claim of Exemption and Request for Hearing" (DE 47) which is now ripe for adjudication. After considering the parties' presentations, the undersigned recommends that the relief sought by Plaintiff be denied and that Defendant's right to garnish the funds at issue be affirmed.

### I. FACTUAL BACKGROUND

By this action, Plaintiff sought to revoke a purchase agreement into which it entered with Defendant pertaining to the construction and purchase of a townhouse. (DE 1). The court granted Defendant's Motion to Dismiss (DE 5) on July 9, 2008 (DE 22), entering Final Judgment on Defendant's behalf on the same date (DE 23). Defendant then moved the court to grant it attorneys' fees and costs. (DE 25). Pursuant to the undersigned's Report and Recommendation (DE 34), Judge Marra entered an Order on November 24,

2008 (DE 35), approving the award of fees in the amount of $17,500.00, along with costs of $157.18.

Defendant filed a Motion for Writ of Garnishment (DE 37) on February 20, 2009, and the Clerk of Court issued the Writ on February 23, 2009 (DE 38) naming Bank of America as Garnishee, for which the record shows a return on February 25, 2009 (DE 41). The Garnishee responded on March 5, 2009, identifying two accounts bearing Plaintiff's name, indicating said accounts contained total deposits of $4,573.20. One is a checking account, with a number ending in 0951 and a balance of $3,727.45 at the time of Garnishee's answer, which shows Plaintiff's name only as an account holder (DE 44).[1] The other one, ending in 8289, is a savings account which Kathleen Gregg (Plaintiff's mother) holds in trust for Plaintiff with a balance of $845.75. (Id.). (DE 44).

Defendant twice served Notice of the Writ of Garnishment on Plaintiff (DEs 40 & 45), with Plaintiff filing a Claim of Exemption and Request for Hearing on March 17, 2009. (DE 47). In his Claim, Plaintiff averred the following exemptions from garnishment: (1) head of family wages; (2) providing more than one-half of the support for a child or other dependent and having net earnings of $500 or less per week; (3) court ordered life insurance benefits or cash surrender value of a life insurance policy; and (4) court ordered payment of private school and health insurance. (DE 47 at 1-2). Defendant filed a Sworn Denial of Claim of Exemption alleging that Plaintiff cannot establish any exemptions to garnishment. (DE 49). Prior to the April 15, 2009, hearing, Defendant deposed Plaintiff,

---

[1] The statements before the court for this account, however, show both Plaintiff's and Kathleen Gregg's names as account holders. See DE 55, Ex. A (containing copies of account statements).

2

filing the transcript of his testimony as part of these proceedings. (DE 51-2).

The undersigned heard testimony from Plaintiff and Defendant on April 15, 2009.[2] At that hearing, Defendant reasserted its position that Plaintiff's claim for exemption is not supported by either law or evidence and, thus, cannot be allowed, emphasizing that none of the monies to which Plaintiff has access through the Bank of America accounts can be traced to earnings. Defendant specifically noted that the deposits to the accounts vary as to amounts and dates, adding that during the taking of his deposition Plaintiff was unable to identify the sources of his income, and that his most recent tax return shows only passive income. Further, Defendant pointed out that both accounts also bear Plaintiff's mother's name (Kathleen Gregg), with the checking account (No. 0951) being a joint one, and the other one (No. 8289), indicating it is a savings account held in trust by Ms. Gregg for Plaintiff's benefit.

Plaintiff did not deny receiving passive income, but maintained that his mother owns 50% of the monies in both Bank of America accounts. Plaintiff further averred that the deposits into those accounts were made by his mother.[3] He also stated that he is employed but does not have an employment agreement; that his earnings are shown on

---

[2] There was no court reporter present, but the proceedings were recorded. During the hearing, the court received two exhibits: (1) copies of a Memorandum of Final Settlement; Amendment to Final Judgment; a letter from a pediatric neuropsychologist; and an Agreed Partial Final Judgment on Paternity, Custody, Parental Responsibility, Private School, and Counseling, all filed in domestic proceedings before the Palm Beach County, Florida, Circuit Court pertaining to Plaintiff's daughter, and (2) a copy of the January 29, 2009, through February 25, 2009, Bank of America checking account statement. Even though the aforesaid documents were not marked as hearing exhibits, at this time, the undersigned will have them included in the record under seal, to be destroyed upon completion of these proceedings.

[3] In his deposition testimony, Plaintiff admitted he had ATM cards for each of the accounts (DE 51-2 at 18, Pltff.'s Dep. at 72:2-8), and also testified that he has a debit card for at least one Bank of America account (id. at 16, Pltff.'s Dep. at 61:3-4).

his tax returns; and that he pays court ordered child support in the amount of $4,000 per month, plus a private school for his daughter costing around $1,800 per month, which funds are paid from his earnings and savings.

The court requested briefing on the issues by the parties after the hearing. Defendant filed a Memorandum of Law in support of its denial of the claim of exemption. Concurrent with its Memorandum, Defendant submitted under seal Bank of America account statements as well as a copy of Plaintiff's IRS Tax Return for the year 2007, and a copy of his Family Law Financial Affidavit in domestic proceedings before the Palm Beach County Circuit Court.[4] (DE 55). Plaintiff filed his Response (DE 56) conventionally, attaching to it the following documentation:  (1) limited corporate information for the following entities: Chiro-Medical Clinic, Inc.; Chiro Rehab Center, P.A.; Nonsurgical Spinal Care, P.A.; and Kansas City Chiropractic, P.A.; (2) Bank of America account statement for the account ending in 8289 covering the period between December 24, 2008, and March 24, 2009, and for the account ending in 8951 for the period between January 29, 2009, and February 25, 2009; (3) IRS Form 1040-V Payment Voucher for 2008 reflecting a payment of $3,549.00; (4) IRS 1040 Individual Income Tax Return for 2008 with Schedules A, C, E, SE, and Form W-2 Worksheet; (5) IRS Forms W-2 for 2008 from Non Surgical Spinal Care of Wichita Inc.; Integrity Diagnostic Inc.; and Chiro Medical Clinic, Inc.; and (6) IRS Forms W-2 for 2007 from Non Surgical Spinal Care of Wichita Inc., Chiro Medical

---

[4] Concomitant with the filing of exhibits to Defendant's Memorandum of Law, Defendant filed a Motion to File Under Seal (DE 54), which the court grants as part of these proceedings.

Clinic, Inc., Medical Care of Fort Lauderdale,[5] and Integrity Diagnostics, Inc. Because Plaintiff did not furnish some of the information to Defendant prior to its filing of the Memorandum supporting Defendant's opposition to Plaintiff's Claim of Exempt, the court allowed a Reply, which Defendant filed conventionally on May 11, 2009 (DE 58).

## II. **STANDARD OF REVIEW**

Under specified instances, Florida law disallows garnishment of wages. Fla. Stat. § 222.11. One of the exemptions to wage garnishment provides that the disposable earnings of the head of a family which exceed $500 per week cannot be attached or garnished absent an agreement in writing so providing. Fla. Stat. § 222.11(2)(b); William v. Espirito Santo Bank of Florida, 656 So.2d 212, 213 (Fla. 3$^d$ DCA 1995). The purpose behind the exemptions is to prevent "'owners of exempt property and their families' from being 'reduced to absolute destitution, thus becoming a charge upon the public.'" Cadel Co. v. Pegasus Ranch, Inc., 920 So.2d 1276, 1278 (Fla. 4th DCA 2006 (quoting Statcoff v. Dezen, 76 So.2d 792, 794 (Fla. 1954)).

Additionally, the Florida legislature enacted Fla. Stat. § 77.041, which streamlines procedures in garnishment proceedings against individuals, and supplements Fla. Stat. § 222.12. Cadel Co. v. Pegasus Ranch, Inc., 920 So.2d at 1278. Under the provisions of Fla. Stat. § 77.041, the Clerk of Court has to attach a notice to writs of garnishment along with a "Claim of Exemption and Request for Hearing" form. Fla. Stat. § 77.041(1). The aforesaid form contains eleven authorized exemptions for the person's identification by way

---

[5] In his deposition, Plaintiff identified Medical Care of Fort Lauderdale as a closed entity which is "still collecting money." (DE 51-2 at 14, Pltff.'s Dep. at 12-24). Plaintiff does not elucidate on the categorization of monies received from this organization, i.e., whether they are profits or any other type of income, even though he provides a W-2 worksheet for it.

of marking the relevant ones, along with a space to list "[o]ther exemptions as provided by law," indicating the need to explain any such applicability. Id. The burden is on the debtor to prove entitlement to any exemption. In re Harrison, 216 B.R. 451, 453 (So. Dis. Fla. 1997) (citing In re Parker, 147 B.R. 810 (M.D. Fla. 1992)); Brock v. Westport Recovery Corp., 832 So.2d 209, 211 (Fla. 4th DCA 2002). Further, also exempt from legal process are the cash surrender value of life insurance policies and annuity contracts, unless the policies or contracts were "effected for the benefit of [a] creditor." Fla. Stat. § 222.14.

### III. DISCUSSION

Here, as earlier noted, Plaintiff claims exemption from garnishment in the following categories: (1) head of family wages; (2) providing more than one-half of the support for a child or other dependent and having net earnings of $500 or less per week; (3) court ordered life insurance benefits or cash surrender value of a life insurance policy; and (4) court ordered payment of private school and health insurance. (DE 47 at 1-2). The court finds that neither Plaintiff's April 15th hearing testimony nor that provided during his sworn deposition, along with the arguments advanced in his Response, support Plaintiff's contention of entitlement to an exemption as a "head of family."[6]

Defendant argues that Plaintiff does not qualify for the exemption under the "head of family" category because the funds in the Bank of America accounts can neither meet

---

[6] As indicated on page 15 of this Report and Recommendation, Defendant does not claim entitlement to garnish the cash surrender value of any life insurance policy, or of any annuity contract proceeds. See DE 53 at 7, § II ¶ 22 (clarifying Defendant's garnishment claim). Therefore, the undersigned does not address those two claims for exemption by Plaintiff.

the definition of "earnings" nor can they be traced thereto.[7] (DE 53 at 3, § I ¶ 8; DE 58 at 2, ¶ 2). Defendant further argues that the W-2 forms provided by Plaintiff only reflect how the entities named therein "treated Pellegrino for tax purposes," adding that the forms themselves also do now prove that "he was actually an employee," reiterating that Plaintiff admits he did not have an employment agreement with any of said entities. (DE 58 at 2, ¶ 4).

Plaintiff lists several entities in Schedule E of his 2007 IRS Tax Return, in which, according to his deposition testimony, he owns at least a 50% interest. (DE 55, Ex. B; DE 51-2 at 15, Pltff.'s Dep. 59:20-25; 60:1-6). During that deposition testimony, he did not indicate that he receives wages from any of these entities. Nonetheless, he argues in his Response that he does have "earnings," attaching in support of that contention a copy of his 2008 income tax return, along with copies of W-2 Forms for the years 2007 and 2008. (DE 56 at 2-4, ¶¶ 6, 8-10, 12-13; at 17-20, 22; at 32-58). Further, he avers that his "earnings" are deposited directly into the checking account (ending in 0951) jointly held with his mother, contending that the statement for said account for the period between January 19, 2009, and February 25, 2009, supports his allegation of receiving "earnings." (DE 56 at 2, ¶¶ 6, 8, 18-20, 22; at 28-31).

The applicable Florida statute considers "earnings" to represent monies paid or payable, in a sum certain, as a result of personal services or of labor performed, which may be identified as wages, salary, commission, or bonus. Fla. Stat. § 222.11(1)(a). To

---

[7] Even if Plaintiff were to establish that he is a head of a household is immaterial to the discussion at this point, since he must show that the monies he attempts to protect are "wages" within the meaning of the statute. Fla. Stat. § 222.11(1)(a).

determine protection from garnishment under Fla. Stat. § 222.11(2)(b), the inquiry centers on whether or not compensation received falls under the rubric of salary resulting from employment or if it results from running a business. Brock v. Westport Recovery Corp., 832 So.2d at 211. A debtor who owns or controls a business cannot obtain exemption of any monies he receives therefrom by simply calling it "wages"; the exemption also excludes any payments received as an independent contractor. In Re Harrison, 216 B.R. 451, 454-55 (S.D. Fla. 1997); In re Zamora, 187 B.R. 783, 785 (S.D. Fla. 1995); In Re Manning, 163 B.R. 380, 382 (S.D. Fla. 1994).

Here, Plaintiff presents contradicting testimony as to his relationship with the entities from which he receives monies. On the one hand, he admits that he owns an interest in the businesses from which he receives income and also that he does not have an employment agreement with any of those entities. See DE 55, Ex. B, Form W-2 Worksheet & Schedule E (identifying sources of income); see also DE 51-2 at 14-16, Pltff.'s Dep. 53-61 (admitting passive income dependent on profit, absence of employment agreement with any source). In contradiction of that record evidence, which includes his deposition testimony under oath, Plaintiff contends in his Response that he "works solely for Chiro-Medical Clinics and Non-Surgical Spinal Care, P.A., a consulting and billing company." (DE 56 at 3, ¶ 15). He also claims that he is an employee of Non-Surgical Care, P.A. and, and that Integrity Diagnostic, Inc. pays him a salary. (DE 56 at 2, ¶¶ 10, 13). Further, Plaintiff testified that the monies he received from entities in which he owns at least a 50% interest do not derive from services rendered, but from the availability of funds, which are disbursed on an availability basis and Plaintiff's need before any profit derived therefrom reaches him. (DE 55, Ex. B, Form W-2 & Schedule E; DE 51-2 at 14-16,

8

Pltff.'s Dep. 53-61). In the midst of these incongruities, the one consistent statement by Plaintiff is that he does not have an employment agreement with any of the entities. (DE 51-2 at 15, Pltff.'s Dep. 58:7; DE 56 at 3, ¶ 14).

Moreover, a review of evidence provided by Plaintiff does not clarify his contention of receiving "earnings." The statements for the checking account (ending in 0951) do not reveal any "payroll"-related deposits until the end of October 2008. (DE 55, Ex. A–10/20/08 to11/25/08 statement). There are four deposits in that statement from "Non Surgical Spi": (1) $321.04 on [Friday] October 31st; (2) $1,342.83 on [Wednesday] November 5th; (3) $1,000.00 on [Wednesday] November 12th; and (4) $321.04 on [Thursday] November 20th. (DE 55, Ex. A). All of these deposits reflect an entry that reads "Des:Payroll Indn: Pellegrino, Sal," and also have what appears to be company identification numbers for both the payor and the payee. [8] (Id.) Similarly, the statement for the period between November 26, 2008, and December 29, 2009, reflects three deposits from the same afore stated source with the same identifiers: (1) $321.04 on [Thursday] December 4th; $321.04 on [Thursday] December 28th; and (3) $597.14 on [Wednesday] December 24th. (Id.) For the period from December 30, 2008, through January 28, 2009, there are four deposits also from the same source, with the same markings: (1) $597.14 on [Wednesday] December 31, 2008; (2) $321.56 on [Thursday] January 8, 2009; (3) $643.13 on [Thursday] January 15th; and (4) $600.73 on [Thursday] January 22nd. (DE 55, Ex. A). Finally, the checking account's statement from January 29,

---

[8] Plaintiff does not explain to the court what these abbreviated entries signify, nor is there any testimony as to the "ID" numbers next to the identifying deposit entries. A logical inference, however, is that the "Co ID" and number following Plaintiff's name could be a company identification for Plaintiff, the same as the "ID" next to "Non Surgical Spi" could identify the payor.

9

2009, through February 25, 2009, shows three deposits marked the same as the foregoing ones: (1) $600.73 on [Thursday] January 29th; (2) $643.13 on [Thursday] February 5th; and $343.67 on [Thursday] February 19th. (DE 56 at 28). The total deposits for 2008 into the checking account from "Non Surgical Spi" total $4,821.17, yet the W-2 form provided by Plaintiff indicates monies received from Non Surgical Spinale [sic] Care of Wichita, Inc., which is the only name that could be matched from the evidence provided by Plaintiff to the alleged employer depositing purported "earnings" into the checking account, shows total "wages, tips, other comp . . . ." in the amount of $8,400.00.[9] (DE 56 at 48). There are no identifiable deposits into the checking account from Chiro-Medical Clinics, Non-Surgical Care, P.A., or Integrity Diagnostic, Inc., all of which Plaintiff alleges are employers who pay him "earnings." In addition, Plaintiff claims that he only has the accounts at Bank of America (DE 51-2 at 5, Pltff.'s Dep. 17:23-25), of which the checking account ending in 0951 is one, with the other one being the savings account at that bank (ending in 8289). This leads to the logical inference that whatever income Plaintiff may have can only be reflected in either of said accounts if the monies are, in fact, deposited for his use and benefit into an account, regardless of the category into which they may fall.

Based on the evidence before the court, and despite the fact that there may be some, but not complete, regularity in the day of the week in which the alleged "earnings"

---

[9] The W-2 form provided by Plaintiff for Non Surgical Spinal Care of Wichita Inc. does match the $8,400.00 figure. (DE 56 at 50). Also, the court notes that the address for the employer and for Plaintiff reflected on the W-2 form are the same: 4021 North Andrews Avenue, Fort Lauderdale, FL 33309. (Id.) There is no explanation for this but, once more, an adverse inference may be drawn against Plaintiff that this is simply an entity in which he has an interest and from which he receives a profit. If that is the case, Plaintiff still has not linked any such monies to the statutory concept of "earnings."

deposits were made into the checking account as noted above, there is still no explanation as to why the amounts vary (i.e., they are not consistently the same); as to why there was no deposit made during the last week in November of 2008; or as to why the only W-2 form issued to Plaintiff from an employer with the same address as Plaintiff's own, shows a total which is different from the total deposits into the checking account. As Defendant argues, the governing Florida Statute makes it clear that for monies received to fall into the category of "earnings" the sums must be "paid or payable, in money of a sum certain, for personal services or labor whether denominated as wages, salary, commission, or bonus." (DE 58 at 2, ¶ 5 (citing Fla. Stat. § 222.11(1)(a)). Also, Plaintiff's deposition testimony about irregular deposits into the aforesaid checking account, indicates that the monies are deposited when they are available and that he pays personal bills from them. (DE 51-2 at 15, Pltff.'s Dep. 60:19-20.) Such an admission logically denies the fact that he receives a regular wage from any of his alleged employers. Consequently, the court finds that the foregoing analysis shows that the sums deposited into Plaintiff's checking account do not fit the statutory description of earnings.

In addition, the court is cognizant of the fact that Judge Marra entered and Opinion and Order on the issue of granting Defendant's attorneys' fees and costs on October 27, 2008 (DE 33). Keeping the date of entry of that Opinion and Order in mind, the undersigned finds it significant that just eight days later, on October 31st, the first deposit from "Non Surgical Spi" appears in the checking account. This coincidence is unexplained in the record but allows the adverse inference of an attempt by Plaintiff to pre-empt the garnishment of any monies from that account in the event that Defendant pursued recovery of attorneys' fees and costs in this action against him.

Further, it should be noted in this record that in his Response Plaintiff contends that he is not an owner of Chiro-Medical Clinic, Inc., adding that what he explained in his deposition did not apply to Chiro-Medical Clinic, Inc., but to entities in which he had "a 50% [ownership] . . . that are closed." (DE 56 at 2, ¶ 11 (referencing DE 51-2 at 15, Pltff.'s Dep. 57-58)). This is just another example of Plaintiff's equivocal presentation. Nonetheless, at least one issue remains clear: the income from the entities in which he holds an interest, or from which he alleges he receives "earnings," do not represent regular compensation based on the terms of an arms length employment agreement.

Indeed, Plaintiff admitted under oath that his mother, who acts as bookkeeper for the entities in question, disburses money to him when available to pay for his personal expenses, and if there is any money left, his share of the profit also goes to him. (DE 51-2 at 13, Pltff.'s Dep. 61:8-20; at 15, Pltff.'s Dep. 60:7-20). This, the court finds, is indicia that Plaintiff controlled the decision as to when he receives monies and how much he gets, and that those payments are purely discretionary and not based on a *bona fide* job based on personal services rendered in the performance of an arms length employment agreement. In re Harrison, 216 B.R. 451, 454 (S.D. Fla. 1997); In re Manning, 163 B.R. 380, 382 (S.D. Fla. 1994). As a result, the court finds that Plaintiff failed to establish the existence of an employer/employee relationship with the entities wherefrom he derives income and, therefore, is not entitled to the wage exemption that he claims, since what he receives does not fall within the Florida Statute's definition of "wages."[10]  Fla. Stat. § 222.11(1)(a); In re

---

[10] It appears that Plaintiff's relationship with the entities from which he derives income is more akin to that of an independent contractor, which the courts find analogous for purposes of examining the wage exemption. In re Harrison, 216 B.R. at 454. Plaintiff does not earn the funds he receives as a result of services rendered, but, instead, he exercises sufficient control over the

Harrison, 216 B.R. at 455.

Based on the undersigned's foregoing analysis assessing the evidence and on her personal observation of Plaintiff's demeanor at the time of the April 15th hearing, the court finds that Plaintiff lacks credibility in his equivocal attempt to claim an exemption from garnishment of the Bank of America accounts. Accordingly, the court finds that Plaintiff has not carried his burden of establishing that monies he receives from any of the entities reflected in his income tax returns and the IRS W-2 forms provided represent "earnings" as defined under applicable statutory and case law. Therefore, the exemption based on wages cannot apply. Brock v. Westport Recovery Corp., 832 So.2d at 212 (citations omitted).

Additionally, assuming *arguendo*, that Plaintiff's claim is valid as to his receiving wages from the accounts in question, Plaintiff cannot show that the funds held in said accounts, also bearing his mother's name (Kathleen Gregg) as account holder, are exempt wages because they were commingled with funds from other sources, including monies allegedly belonging to Ms. Gregg. (DE 51-2 at 18, Pltff.'s Dep. at 69:13-14); In re Kindorf, 105 B.R. 685, 689 (M.D. Fla. 1989) (citing In Re McCafferty, 81 B.R. 99 (M.D. Fla. 1987) for proposition that commingled funds prevented "ability to trace and identify wage funds defeating a claim of exemption")). Despite Plaintiff's attempt in his Response to establish the existence of wages going into the checking account, Plaintiff's deposition testimony

---

entities which, in turn, allows him to receive funds therefrom. In re Schlein, 8 F.3d 745, 755-56 (11th Cir. 1993). The seminal case on applicability of the exemption to an independent contractor's earnings is Patten Package Co. v. Houser, 102 Fla. 503, 136 So. 353 (Fla. 1931) wherein the Florida Supreme Court held that the statute which preceded Fla. Stat. § 222.11 did not extend to protect monies earned by an independent contractor. The Schlein court found Patten to support the interpretation of the current Statute. 8 F.3d at 755-56.

indicates that he does not know the source of the monies reaching the accounts, and that his personal expenses are being paid out of those funds. See, e.g., DE 51-2 at 18, Pltff.'s Dep. at 19 (indicating Plaintiff does not make deposit into accounts) and id. at 17, Pltff.'s Dep. 68:15-20; at 18, Pltff.'s Dep. 69:23-25 & 70:1, 5-7; (reflecting ignorance of source of deposits); see also DE 51-2 at 18, Pltff.'s Dep. 70:12-17 (acknowledging daughter's school, student loans paid from checking account). Also of note is the fact that the statements for both accounts went to Plaintiff's business address (101 Plaza Real S. Ste. 226, Boca Raton, Florida 33432) through the end of May 2008 for account 0951 and through the end of June 2008 for account 8289. (DE 55, Ex. A). The address is corroborated by Plaintiff's own testimony as being his former business address (DE 51-2 at 9, Pltff.'s Dep. 35:23-25) and the discontinuance of using that address is supported, too, by his testimony that he does not have an office there any more (id.). Indeed, quite significantly and as earlier noted, Plaintiff indicates that he has no other bank accounts (DE 51-2 at 5, Pltff.'s Dep. 17:23-25), and avers that the Bank of America accounts are the only ones that he owns "flat out" (DE 51-2 at 18, Pltff.'s Dep. 72:15-16), in contravention of Bank of America's identification of account owners. Accordingly, the court finds that, were the monies in the accounts at issue to fall within the statutory definition of wages, they still would not be exempt from garnishment because of the inability to identify their source and because of their being commingled with another person's funds.

Furthermore, the court concurs with Defendant's averment that the payment of court-ordered tuition in a private school for Plaintiff's daughter, and her health insurance coverage, are a restatement of Plaintiff's claim for head of household exemption (DE 53 at 2, ¶ 3), since that falls within the category of support of a minor child. Consequently, the

foregoing analysis finding that the head of family exemption does not apply to the Bank of America accounts applies equally to these two claimed exemptions. Additionally, the court notes that Defendant is not claiming entitlement to the cash surrender value of any life insurance policies, or to the proceeds of any annuity contracts which may belong to Plaintiff. (DE 53 at 7, § II ¶ 22). Hence, those claimed exemptions are moot.

## IV. <u>CONCLUSION</u>

Plaintiff failed to carry his burden to establish that he performs any type of labor or personal services for any of the entities from which he received W-2 forms. Consequently, he cannot establish that any funds contained in the Bank of America accounts identified herein are "earnings" exempt from garnishment. Further, even though Plaintiff filed personal information conventionally (DE 56), the court **GRANTS** Defendant's Motion to File Under Seal (DE 54) the documents submitted for the court's consideration after the April 15, 2009, Hearing. Also, the court hereby **ORDERS** the Clerk of Court to file the two exhibits from the April 15, 2009, hearing (Bank of America statement covering the period from January 1, 1009, through February 25, 2009, for account ending in 0951, and documentation relating to the domestic matter in Palm Beach County, Florida, Circuit Court involving Plaintiff's daughter) to be docketed under seal in these proceedings, with the directive that said exhibits are to be destroyed in accordance with Defendant's Tracking Form (DE 55) indication for sealed documents. Finally, in accordance with the foregoing discussion and analysis, the undersigned **RECOMMENDS** that:

1. Plaintiff's Claim of Exemption (DE 47) be **DENIED**; and
2. Defendant's right to garnish the funds contained in the Bank of America

15

accounts as herein identified be **AFFIRMED**;

The parties have ten (10) days from the date of this Report and Recommendation within which to serve and file written objections to it, if any, with the Honorable Kenneth A. Marra, United States District Judge.  Failure to file objections timely shall bar the parties from attacking on appeal the factual findings contained herein. Resolution Trust Corp. v. Hallmark Builders, 996 F.2d 1144, 1149 (11th Cir. 1993); LoConte v. Drugger, 847 F.2d 745, 749 (11th Cir. 1988).

Respectfully submitted in Chambers at West Palm Beach, Florida, this 15th day of May, 2009.

LINNEA R. JOHNSON
UNITED STATES MAGISTRATE JUDGE

Copies to:   Honorable Kenneth A. Marra, United States District Judge
All Counsel of Record
Dr. Sal Pellegrino, 731 N.E. 32nd Street, Boca Raton, FL  33431